Filed 7/10/14  In re K.H. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>K.H.,<br><br>        Defendant and Appellant. | A139801<br><br>(Contra Costa County<br>Super. Ct. No. J13-00951) |

K.H. (appellant) appeals after the juvenile court sustained one count of misdemeanor exhibiting a deadly weapon in a threatening manner and one count of resisting a police officer, in a juvenile wardship proceeding (Welf. & Inst. Code, § 602). Appellant's sole contention on appeal is that the juvenile court violated her Sixth Amendment right to confrontation when it admitted into evidence the 911 call of the alleged victim of the exhibition of a deadly weapon offense.  We shall affirm the juvenile court's orders.

### PROCEDURAL BACKGROUND

On August 13, 2013, a juvenile wardship petition was filed alleging that appellant, then age 15, had committed one count of misdemeanor exhibiting a deadly weapon other than a firearm in a threatening manner (Pen. Code, § 417, subd. (a)(1) - count one), and one count of resisting, obstructing, or delaying a police officer (Pen. Code, § 148, subd. (a)( 1) - count two).

1

On September 3, 2013, after a contested jurisdictional hearing, the juvenile court sustained the petition as to both counts. At the September 13, 2013 dispositional hearing, the court adjudged appellant a ward of the court and placed her on supervised probation in the home of her foster father, subject to various terms and conditions.

On September 17, 2013, appellant filed a notice of appeal.

*FACTUAL BACKGROUND*

At the dispositional hearing, Barry S., appellant's foster father, testified that, on August 9, 2013, an incident took place at his and appellant's home while appellant's biological mother, Kori H., was visiting. Appellant asked Barry for some of his cough medicine and he refused to give it to her after Kori objected because it contained a narcotic. K.H. "got rude and stormed out of the bedroom," and Kori said she was " 'tired of [appellant's] rude mouth.' " Appellant and Kori then "kind of got into it in the hallway," and Barry had to separate them. Appellant seemed scared during the "pushing and shoving" that took place with Kori.

Appellant then went to the kitchen to make a sandwich. She picked up a meat cleaver style of knife and Kori asked, " 'What's that, for me?' " Barry and Kori tried to take the knife away from appellant and they "wrestled a bit" before Kori "took her to the ground." Barry and Kori then took the knife away from appellant. After being shown photographs of the knife and Kori's fingers, Barry testified that Kori "got nicked, wrestling around," trying to get the knife. After the incident, Barry sent appellant to her room and Kori called the police.

Barry felt the need to take the knife away from appellant because, "with them arguing and wrestling about, I didn't want either one of them to get cut." He said he was "not sure" if appellant was out of control at that time, but acknowledged that he may have told the police shortly after the incident that she was out of control. He did not believe that appellant held the knife in a threatening manner, though he was unsure if he had previously told police that she was holding it in a threatening way. She held the knife "down in front of her with the blade pointing . . . toward her."

On cross-examination, Barry testified that Kori was bigger and stronger than appellant in that she was an inch taller and 60 to 70 pounds heavier. He also testified that he tried to take the knife away from appellant because of the altercation he had just witnessed between her and Kori in the hallway. He thought he should get control of the knife "before they got into it again." He believed that Kori "probably" was the aggressor during the incident.

Antioch Police Officer Jason Vanderpool testified that he interviewed Barry S. three days after the incident with the knife. Barry told Vanderpool that appellant became upset with Kori and began to yell at her. He also said that appellant picked up a meat cleaver and held it in a " 'threatening manner,' " and that she was angry and was shouting profanities at Kori, though she made no verbal threats. He and Kori were able to get the cleaver away from appellant, who was out of control during the incident. Barry never said that Kori was the aggressor. Nor did he say anything about appellant and Kori pushing and shoving each other before the knife incident or about appellant being scared.

Antioch Police Sergeant Trevor Schnitzius testified that he was on his way to Barry's house, in response to a call regarding a family fight, when an officer at the scene advised him to stop a female who was walking on the street near the house. Schnitzius, who was in full uniform and driving a marked patrol car, pulled his car to the side of the road, got out, and walked toward K.H. He told her to have a seat on the curb. In response, K.H. started backing up, repeating, " 'No, no, no.' " When Schnitzius told K.H. to stop, she ran into the street in an attempt to avoid him. He chased her, ultimately pushing her into a bush. K.H. continued to thrash around and resist while he attempted to handcuff her.

### DISCUSSION

Appellant contends the juvenile court violated her Sixth Amendment right to confrontation when it admitted into evidence the 911 call made by Kori H. because Kori was not available for cross-examination at the hearing and appellant had no prior opportunity to cross-examine her.

*Trial Court Background*

Before the presentation of evidence, the prosecutor requested a ruling on the admissibility of a recording of Kori's statements to the 911 dispatcher during her call to police following the incident in the kitchen. Defense counsel objected to admission of the recording on Sixth Amendment grounds, arguing that Kori's statements were testimonial and also constituted hearsay.

The relevant portions of the 911 call are as follows:

"Dispatch: 911, what's the address of your emergency?

"[Kori H.]: Yeah, I have a daughter who's trying to stab me with a knife!

[¶] . . . [¶]

"D: Can you stop screaming so I can understand you?

"*Unintelligible voice from background.*

[¶] . . . [¶]

"D: Ok, well stop screaming 'cause it's hard to understand you. . . .

"[Dispatcher asks more questions about location, daughter's name and age.]

"D: Who has the knife right now?

"[Kori]: Nobody, I took it away from her.

"D: Ok. Where is she at right now?

"[Kori]: In her bedroom, putting her shoes on, getting ready to run.

"[Dispatcher asks questions about K.H.'s appearance.]

"Female voice in background: inaudible . . . bitch!

"D: Alright, can you just go away from her and, like, stop making it worse? Ok, just go away from her, go away from her so she can't hear you, ok?

"[Kori]: Alright.

"D: It's just gonna make it worse, and she's gonna start screaming, and we're not there yet, ok?

"[Kori]: Alright.

[¶] . . . [¶]

"D: Alright. Alright, well officers are on their way. Just stay away from her ok?

"[Kori]:  Ok."

The trial court initially ruled, based on the transcript of the 911 call, that the recording was not testimonial and would be admitted "through the hearsay exception for spontaneous declarations."  After listening to the recording, the court stated, "I stand by my ruling, and it's underscored by the tone of voice that I hear in what I understand is her mother, Kori's voice.  So my ruling stands."

### *Legal Analysis*

We independently review the juvenile court's determination that Kori's 911 call was nontestimonial and that its admission did not violate appellant's Sixth Amendment rights.  (See *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477-1478; cf. *People v. Seijas* (2005) 36 Cal.4th 291, 304.)

In *Crawford v. Washington* (2004) 541 U.S. 36, 53-54 (*Crawford*), the United States Supreme Court held that the confrontation clause bars admission of a testimonial statement against a criminal defendant unless the declarant is unavailable at trial and the defendant has had a prior opportunity to cross-examine the declarant.  Subsequently, in *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*), the Supreme Court applied *Crawford* in two consolidated cases involving victims' answers to out-of-court questioning by police.  The court in *Davis* clarified the difference between "testimonial" and "nontestimonial" statements:  "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  (*Davis*, at p. 822, fn. omitted.)

In one of the consolidated cases in *Davis* (*Davis v. Washington*, No. 05–5224), the court addressed whether statements made during a 911 call were testimonial for purposes of the confrontation clause.  The court distinguished the statements found testimonial in *Crawford*, *supra*, 541 U.S. 36, in which the declarant "was responding calmly, at the station house, to a series of questions, with the officer-interrogator taping

and making notes of her answers," from a 911 call, which "is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." (*Davis*, *supra*, 547 U.S. at p. 827.)

In *People v. Cage* (2007) 40 Cal.4th 965, 984 (*Cage*), the California Supreme Court articulated several basic principles it had derived from *Davis*: "First, . . . the confrontation clause is concerned solely with hearsay statements that are testimonial, in that they are out-of-court analogs, in purpose and form, of the testimony given by witnesses at trial. Second, though a statement need not be sworn under oath to be testimonial, it must have occurred under circumstances that imparted, to some degree, the formality and solemnity characteristic of testimony. Third, the statement must have been given and taken *primarily* for the *purpose* ascribed to testimony—to establish or prove some past fact for possible use in a criminal trial. Fourth, the primary purpose for which a statement was given and taken is to be determined 'objectively,' considering all the circumstances that might reasonably bear on the intent of the participants in the conversation. Fifth, sufficient formality and solemnity are present when, in a nonemergency situation, one responds to questioning by law enforcement officials, where deliberate falsehoods might be criminal offenses. Sixth, statements elicited by law enforcement officials are not testimonial if the primary purpose in giving and receiving them is to deal with a contemporaneous emergency, rather than to produce evidence about past events for possible use at a criminal trial." (Fns. omitted.)

Following *Davis* and *Cage*, a number of appellate courts in California have rejected arguments that 911 calls by the victims in those cases were testimonial. (See, e.g., *People v. Gann* (2011) 193 Cal.App.4th 994, 1008 (*Gann*), *People v. Johnson* (2010) 189 Cal.App.4th 1216, 1225-1226 (*Johnson*); *People v. Banos* (2009) 178 Cal.App.4th 483, 492-493, 497; *People v. Brenn* (2007) 152 Cal.App.4th 166, 176-177 (*Brenn*).) *Davis*, *Cage*, and the subsequent Court of Appeal cases thus have made clear that "a 911 call made during the course of an emergency situation is ordinarily made for the primary nontestimonial purpose of alerting the police about the situation and to provide information germane to dealing with the emergency." (*Gann*, at p. 1008.)

6

For example, in *Gann*, *supra*, 193 Cal.App.4th at page 1008, the court applied the analyses of prior cases and concluded that the victim's statements to the 911 operator in that case were not testimonial under *Crawford* in that "[t]he dispatcher was primarily concerned with what was happening at the moment, in order to obtain information that would assist responding officers in rendering aid to the victims and finding the escaping perpetrator—not [with securing] a conviction in a court trial. The information given was not formal or structured. Because the statements that [the victim] made to the 911 operator were not testimonial in nature, they were not subject to the requirements of *Crawford*."

Here, appellant notes that Kori's exchange with the 911 dispatcher took place after Kori and Barry had taken the knife away from appellant and appellant had gone to her room. Thus, according to appellant, the statements were testimonial because, "[f]rom an objective standpoint, no ongoing emergency existed."

The defendant in *Johnson*, *supra*, 189 Cal.App.4th at page 1225 made a similar argument, relying on *Davis* in claiming that the victim's statements to the 911 dispatcher were testimonial because they " 'were made *after* the alleged incident and *after* . . . [the victim] had left the scene.' " Division Five of this District rejected "a reading of *Davis* that would require that challenged statements be made while the actual assault is ongoing in order to be nontestimonial." (*Johnson*, at p. 1225.)

The *Johnson* court recognized that, in *Davis*, the victim in the 911 call "recited the events in the present tense, and the court said she described the events as they were 'actually happening.' [Citation.] But the facts recited in *Davis* do not establish that the assault was literally ongoing during the call. No sounds of violence or shouts of pain were reported. It is certainly not unreasonable that a victim of violence who reports it immediately after its occurrence might describe it in the present tense or be so frightened or injured that she scrambles the tense. Though *Davis* stated [the victim] described events as they were happening, it went on to contrast that to describing past events, 'hours' after they had occurred. [Citation.] Accordingly, *Davis* supports a conclusion that statements made *immediately* after, and in response to, a violent assault should be

7

treated as presumptively made during a contemporaneous emergency." (*Johnson*, *supra*, 189 Cal.App.4th at p. 1225, citing *Davis*, *supra*, 547 U.S. at p. 827, fn. omitted; See also *Brenn*, *supra*, 152 Cal.App.4th at pp. 173, 176-177 [victim's statements in a 911 call were made during an ongoing emergency and nontestimonial, even though victim had left scene of assault and made call minutes later from a neighbor's house].)

Likewise, in this case, the evidence shows that Kori made the 911 call quite soon after the confrontation with appellant over the knife. She spoke of the offense in the present tense and the 911 dispatcher had to ask Kori to "stop screaming" so that she could understand what Kori was saying. The juvenile court also referred to the tone of Kori's voice as supporting its conclusion that her statements were nontestimonial and admissible as spontaneous declarations. Moreover, Kori told the dispatcher that appellant was in her bedroom, putting her shoes on, and "getting ready to run." Finally, the 911 transcript reflects that there was a female voice in the background saying, inter alia, "bitch," and the dispatcher expressed concern about K.H. during the 911 call, telling Kori to "go away from her so she can't hear you" and reminding Kori that "we're not there yet."

All of this evidence supports the conclusion that Kori's statements were "made *immediately* after, and in response to," appellant's threatening actions with the knife, and should therefore "be treated as presumptively made during a contemporaneous emergency." (*Johnson*, *supra*, 189 Cal.App.4th at p. 1225.) In addition, the record reflects that K.H. was apparently present and reacting to Kori's statements to the dispatcher during part of the 911 call and that appellant was about to "run," which further demonstrates that the statements were made "under circumstances objectively indicating" that the exchange between the dispatcher and Kori related to the possible continuing dangerousness and imminent flight of someone who had just committed a dangerous act. (*Davis*, *supra*, 547 U.S. at p. 822.) Hence, the emergency had *not* in fact abated at the time of the call. (See *ibid.*; see also *Gann*, *supra*, 193 Cal.App.4th at p. 1008.)[1]

---

[1] Appellant asserts that "the contemporaneity of a statement with the speaker's observations is not a factor to be afforded significant weight in determining whether a

Appellant nonetheless observes that the trustworthiness of her statements during the 911 call are undermined by evidence presented at the hearing suggesting that she and Kori had "an ongoing contentious relationship"; that Kori, who was much older and bigger than appellant, engaged in physical confrontations with her; and that Kori had a history of negative interactions with the law, including two felonies for theft in 1997. Appellant argues that, in light of this evidence, "it is conceivable that the statements Kori made against her daughter in the aftermath of a fight were also charged and, motivated by antagonism or spite, they fell outside the boundaries of truth." However, as our Supreme Court explained in *People v. Blacksher* (2011) 52 Cal.4th 769, in objectively evaluating the circumstances of the 911 call, the question is "the *primary* purpose of both officer and declarant. . . . [B]oth participants may have mixed motives. An officer, even when responding to an emergency, remains an investigator and, thus, is not indifferent to the gathering of evidence. Likewise, victims and other declarants may or may not want to see a perpetrator ultimately prosecuted. The question remains, when viewed objectively, what is the primary purpose of both declarant and officer? [Citation.]" (*Id*. at p. 814, citing *Michigan v. Bryant* (2011) 131 S.Ct. 1143, 1161-1162 [objective inquiry "focuses on the understanding and purpose of a reasonable victim in the circumstances of the

_____

statement is testimonial," citing *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 316, in which the Supreme Court stated: "Though the witness's statements in *Davis* were 'near-contemporaneous' to the events she reported, we nevertheless held that they could *not* be admitted absent an opportunity to confront the witness." Appellant, however, misconstrues the reason the victim's statements in the second consolidated case in *Davis*—*Hammon v. Indiana*, No. 05-5705, which did not involve a 911 call—were found to be testimonial. There, unlike the present case, the Supreme Court emphasized the formality of the interrogation, including the facts that the police arrived at the scene four minutes after the 911 call began and took the victim into a separate room from the defendant; the victim's statement "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed"; and the statement was given "some time after the events described were over." Such a statement, made "under official interrogation," was "an obvious substitute for live testimony . . . ." (*Davis*, *supra*, 547 U.S. at p. 830.) The objective circumstances of the police interrogation in *Davis* are plainly distinct from those in present case.

actual victim—circumstances that prominently include the victim's physical state"].)
Hence, although we could speculate about other possible motives for Kori's call, the evidence already discussed, *ante*, supports a conclusion that, in all of the circumstances, the foremost purpose of a reasonable victim in Kori's situation would be to apprise the police of a crime that had just been committed, especially given the prospect that appellant might again become aggressive or flee the scene. (See *Blacksher*, at p. 814.)

In sum, Kori's statements on the 911 call described ongoing or immediately past events, had no indicia of formality, and were made under circumstances objectively showing that their primary purpose was to get police assistance related to an ongoing emergency. (See *Davis*, *supra*, 547 U.S. at p. 822; *Cage*, *supra*, 40 Cal.4th at p. 984; *Johnson*, *supra*, 189 Cal.App.4th at p. 1225; *Gann*, *supra*, 193 Cal.App.4th at p. 1008.) For these reasons, we conclude the 911 recording was nontestimonial and the juvenile court properly admitted it into evidence as a spontaneous declaration pursuant to Evidence Code section 1240.[2]

---

[2] Appellant challenges admission of Kori's statements to the 911 operator solely on Sixth Amendment grounds. She expressly does not dispute that they were otherwise admissible as spontaneous declarations. (See Evid. Code, § 1240.) In any case, we agree with the juvenile court that Kori's statements were admissible under the spontaneous declaration exception to the hearsay rule because the evidence supports the court's conclusion that the statements purported "to narrate, describe, or explain an act, condition, or event perceived by" her, and they were "made spontaneously while [she] was under the stress of excitement caused by such perception." (Evid. Code, § 1240, subds. (a), (b).)

### *DISPOSITION*

The juvenile court's orders are affirmed.


                                                 _____

                                                 Kline, P.J.


We concur:


_____
Richman, J.


_____
Brick, J.*


     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11